IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs December 9, 2020

## STATE OF TENNESSEE v. NATHANIEL SHAWN DECLUE

**Appeal from the Circuit Court for Bedford County**
**Nos. 18901, 18918   Forest A. Durard, Jr., Judge**

_____

### No. M2019-01424-CCA-R3-CD

_____

The Defendant, Nathaniel Shawn Declue, pleaded guilty to two counts of possession of methamphetamine with intent to sell, two counts of possession of methamphetamine with intent to deliver, driving on revoked license, violation of the vehicle registration law, simple possession of a Schedule VI substance, and possession of drug paraphernalia. At the sentencing hearing, the trial court merged multiple convictions and imposed an effective sentence of twenty years in confinement. The Defendant appeals, asserting that the trial court abused its discretion by failing to apply a mitigating factor and by failing to consider the economic resources available to state prisons in its decision to impose a twenty-year effective sentence. After review of the record, we affirm the trial court's judgments.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Jonathon Fagan (on appeal), Nashville, Tennessee, and Wes Hall (at hearing), Unionville, Tennessee, for the appellant, Nathaniel Shawn Declue.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Robert J. Carter, District Attorney General; and Mike Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL AND PROCEDURAL HISTORY

According to the presentence report admitted as evidence at the Defendant's sentencing hearing, the Defendant's cases originated from two unrelated traffic stops

occurring in January and March of 2018.[1]  On January 23, 2018, law enforcement officers stopped the Defendant for a non-functioning driver-side taillight but discovered during the stop that the Defendant was driving on a revoked license, was not in compliance with the vehicle registration law, and was in possession of nine grams of methamphetamine.  The Defendant was arrested, and he was released on bond.  While out on bond, the Defendant was stopped again on March 24, 2018, for failing to exercise due care.  During the traffic stop, officers found 2.47 grams of methamphetamine, two marijuana "roaches," a broken glass pipe, and a metal spoon with residue on it.  On July 22, 2019, the Defendant pleaded guilty to offenses originating from the traffic stops.  In case number 18918 related to the January 2018 traffic stop, the Defendant pleaded guilty to possession of methamphetamine with intent to sell, possession of methamphetamine with intent to deliver, driving on revoked license, and violation of the vehicle registration law.  In case number 18901 related to the March 2018 traffic stop, the Defendant pleaded guilty to possession of methamphetamine with intent to sell, possession of methamphetamine with intent to deliver, simple possession of a Schedule VI controlled substance, and possession of drug paraphernalia.  The Defendant entered an open plea to the indictment, and the trial court held a sentencing hearing.

The presentence report, judgments of prior convictions, and an order revoking the Defendant's probation were entered as exhibits at the hearing.  These exhibits collectively showed that the Defendant had previously been convicted of eight counts of burglary of an automobile, assault, evading arrest, driving under the influence, an alcohol-related offense, and driving on suspended license, and they showed that he had a pending theft charge.  The exhibits also showed that the Defendant violated his probation in a prior case.

At the hearing, Officer Steven Daugherty with the Seventeenth Judicial District Drug Task Force testified that he had seen an increase in the use of methamphetamine in Bedford County and that incarceration provided a deterrent for individuals involved in drug activity.  On cross-examination, he agreed that an individual's involvement in drug activity can negatively impact the person's family and that rehabilitation can be an effective treatment.  Officer Daugherty testified that rehabilitation would not be effective for an individual in the Defendant's situation, but he agreed that his opinion was based on his experience with individuals whom rehabilitation did not help.

Tennessee Department of Correction Officer Libby Stejskal testified that she interviewed the Defendant while he was incarcerated in this case.  She observed him

---

[1] The transcript of the guilty plea hearing was not included in the record.  Notwithstanding the failure to include the transcript, the record is sufficient for this court to address the issues raised on appeal.  *See State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012).

transition from calm to emotional as the interview progressed into topics related to his mental health, drug use, and family history. She testified that the Defendant began crying at one point during the interview, but she could not say to what extent he suffered from mental health issues because she was not a mental health professional. Ms. Stejskal testified that the Defendant was candid and genuine during the interview, describing his responses to her questions as "very forthcoming." Ms. Stejskal testified that the Defendant reported first using drugs at age eleven or twelve.

The Defendant's mother, Ms. Shawanda Declue, testified that she was unaware that the Defendant began using drugs at age eleven or twelve. She testified that she transferred the Defendant from a school in New Mexico that was not in "a great area" to one in another school district that was "one of [the] top schools in the state" where the Defendant became an "A/B student" and a "star athlete." She recalled that the Defendant's success changed course when he broke his arm playing sports and began taking prescribed Oxycodone for the associated pain. The Defendant began acting out after that incident, and he began seeing a counselor and sought help from a psychiatrist. He was diagnosed with ADHD and began taking prescribed Adderall. She stopped filling the Defendant's Adderall prescription about nine months later, and she sent him to undergo rehabilitation. A doctor working with the Defendant in rehabilitation reported he "was making great progress," but the Defendant had to leave rehabilitation when Ms. Declue's insurance benefits would no longer cover the treatment. Ms. Declue and the Defendant moved to Fairview, Tennessee, but the Defendant's behavioral problems continued. While on probation after being caught smoking cigarettes, the Defendant refused to attend rehabilitative treatment.

Ms. Declue moved to Bedford County once the Defendant graduated high school, and the Defendant moved there approximately three or four months later. Ms. Declue testified that she knew the Defendant used methamphetamine in Bedford County and that she asked him to stop, but he told her that "he does not do that much" and that "he will be okay." She testified that she did not think incarceration was a deterrent for drug users and that she believed her son needed to be in a drug treatment facility. She agreed that incarceration has had positive benefits for the Defendant, stating that he was then articulate, calm, and had not had any manic episodes to her knowledge. She believed a period of confinement followed by rehabilitation would be effective for the Defendant.

The Defendant testified that he first used drugs at the age of eleven and that he began using methamphetamine when his Adderall prescription was taken away from him. He stated that he liked "staying up all the time" and that methamphetamine was better than Adderall to do so. He disagreed that his family enabled his drug use. He explained that he wanted to change his life and accept responsibility for his actions. The Defendant

testified that he should be punished with a period of incarceration and permitted to undergo rehabilitative treatment afterward.

On cross-examination, the Defendant conceded that he was arrested twice for possessing methamphetamine in January and March of 2018. He agreed that he wanted an alternative sentence to seek rehabilitative treatment, but he also conceded that he had violated his probation previously in other cases and had a pending theft charge in another county. He testified that he had not yet participated in rehabilitation while incarcerated.

The trial court considered the evidence presented at the hearing, the presentence report, and the relevant sentencing factors. The trial court found that the Defendant was a Range I, standard offender. The trial court reviewed the Defendant's criminal history and applied as an enhancement factor that the Defendant had a "previous history of criminal convictions or criminal behavior." T.C.A. § 40-35-114(1). Additionally, the trial court found that the Defendant had previously violated the conditions of his probation on multiple occasions, and it applied as an enhancement factor his failure "to comply with the conditions of a sentence involving release into the community." T.C.A. § 40-35-114(8). Regarding the trial court's application of mitigating factors, it stated that

> only one that could apply would be one, but this is a drug related offense and particularly a very bad drug at that, and the Court typically gives that zero weight. The insidious nature of this drug I think removes any application of that factor whatsoever.

*See* T.C.A. § 40-35-113(1) (stating that "mitigating factors may include" . . . "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury").

Regarding the Defendant's candidacy for alternative sentencing in case number 18918, the trial court considered the presentence report, the Defendant's "physical and mental conditions," the facts surrounding the case, his prior history, his "previous actions and character," and the "expectation or reasonable expectation that [the Defendant] might be rehabilitated or potential or lack of potential for rehabilitation." The trial court also considered whether the Defendant would abide by the terms of probation, but it found that each time he had an alternative sentence in the past the Defendant "messed it up" and that fact did not "bode very well in [his] favor." In considering "whether or not measures less restrictive than confinement have frequently or recently been applied unsuccessfully," the trial court found that the Defendant violated his probation within approximately two months of completing "boot camp." The trial court stated that it has ordered a probationary sentence in conjunction with a sentence of confinement, but it found that it would not do so when a defendant has demonstrated "these past actions." Regarding deterrence, the trial court found that methamphetamine is "pervasive in" the

community and that "you have to escape the people that are associated with it." The trial court, thus, ordered the Defendant to serve his sentences in confinement.

The trial court sentenced the Defendant in case number 18918 to twelve years for possession of methamphetamine with intent to sell and to a concurrent sentence of six months for driving on revoked license, and it imposed a $25 fine for violating the vehicle registration law. In case number 18901, the trial court ordered an eight-year sentence consecutive to case number 18918 for possession of methamphetamine with intent to sell and to concurrent sentences of eleven months twenty-nine days for simple possession of a Schedule VI controlled substance and eleven months twenty-nine days for possession of drug paraphernalia. The trial court merged the Defendant's convictions of possession of methamphetamine with intent to deliver in case numbers 18901 and 18918 with the Defendant's convictions of possession of methamphetamine with intent to sell in each case. The Defendant received an effective sentence of twenty years in confinement. This appeal followed.

## ANALYSIS

The Defendant argues that the trial court abused its discretion in sentencing him to a maximum sentence of twelve years for possession of methamphetamine with intent to sell in case number 18918, because it failed to apply Tennessee Code Annotated section 40-35-113(1) as a mitigating factor and did not consider in its decision to impose a twenty-year effective sentence the economic resources available to state prisons. The State responds that the trial court properly exercised its discretion in imposing the sentences. We agree with the State.

This court reviews the length of a sentence for abuse of discretion, applying "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principals of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A sentence will be upheld "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. This standard of review also applies to "questions related to probation or any other alternative sentence." *Caudle*, 388 S.W.3d at 278-79.

Once the trial court establishes the appropriate range of the sentence, the court must consider the following factors to determine the specific length of the sentence:

> (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal

conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation.

*State v. Dotson*, 450 S.W.3d 1, 102-03 (Tenn. 2014) (citing T.C.A. §§ 40-35-103(5), -113, -114, -210(b)).  The weight given to mitigating and enhancement factors is a decision "left to the trial court's sound discretion."  *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008).  Accordingly, "this court is not free to reevaluate the weight and value assigned to the factors found by the trial court."  *State v. Edward Rudolph Wyse, Jr.*, No. E2019-01454-CCA-R3-CD, 2020 WL 6141011, at *13 (Tenn. Crim. App. Oct. 20, 2020); *see Bise*, 380 S.W.3d at 699.  A trial court's misapplication of an enhancement or mitigating factor does not result in an abuse of discretion "if 'there are other reasons consistent with the purposes and principles of sentencing.'"  *State v. Branham*, 501 S.W.3d 577, 595 (Tenn. Crim. App. 2016) (quoting *Bise*, 380 S.W.3d at 706).

The trial court did not abuse its discretion in sentencing the Defendant.  The trial court found that the Defendant was a Range I, standard offender.  The Defendant was convicted of: two counts of possession of methamphetamine with intent to sell, Class B felonies, *see* T.C.A. § 39-17-434, -417(c)(1); one count of driving on revoked license, a Class B misdemeanor, *see* T.C.A. § 55-50-504(a)(1); one count of simple possession of a Schedule VI substance, a Class A misdemeanor, *see* T.C.A. § 39-17-418(c)(1); and one count of possession of drug paraphernalia, a Class A misdemeanor, *see* T.C.A. § 39-17-425(a)(2).  The sentencing range for a Range I offender in relation to the above offenses are as follows:

Class B felony – eight to twelve years;
Class A misdemeanor – not greater than eleven months twenty-nine days;
Class B misdemeanor – not greater than six months.

T.C.A. § 40-35-112(a)(2); T.C.A. § 40-35-111(e)(1); T.C.A. § 40-35-111(e)(2).  The trial court appropriately sentenced the Defendant to twelve years for one count of possession of methamphetamine with intent to sell and eight years for the second count, six months for driving on revoked license, eleven months twenty-nine days for simple possession of a Schedule VI substance, and eleven months twenty-nine days for possession of drug paraphernalia as those sentences were in the appropriate sentencing ranges.

The Defendant challenges his sentence in part by arguing that the trial court failed to apply an applicable mitigating factor.  The trial court applied enhancement factor one

and eight, finding that the Defendant had several prior criminal convictions including eight felonies for auto burglary among other offenses and violated the conditions of his probation on multiple occasions in other cases. *See* T.C.A. § 40-35-114(1), (8). Regarding mitigating factors, the trial court determined that factor one was applicable, but it gave it zero weight in its sentencing determination. *See* T.C.A. § 40-35-113(1). The trial court had the discretion to give this mitigating factor zero weight, *see Carter*, 254 S.W.3d at 345, and we disagree that it failed to apply the mitigating factor as the Defendant claims. Because the trial court did not abuse its discretion, we conclude that the Defendant is not entitled to relief on this ground.

The Defendant also cites *State v. Ashby*, 823 S.W.2d 166 (Tenn. 1991), for the proposition that the trial court erred by failing to consider "[s]carce prison resources available" in the state under Tennessee Code Annotated section 40-35-102(5) in making its sentencing determination. Section 40-35-102(5) states that there are limited prison resources and prioritizes incarceration for those offenders who commit "the most severe offenses" and possess "criminal histories evincing a clear disregard for the law and morals of society and evincing failure of past efforts at rehabilitation." We find the Defendant's argument unpersuasive. Although the trial court did not reference Section 40-35-102(5) explicitly, the record reflects the sentence imposed by the trial court is consistent with the purposes and principles of sentencing. The trial court found that the Defendant's drug convictions involved "a very bad drug" of an "insidious nature." The trial court found that the Defendant had several prior convictions, including auto burglary, evading arrest, assault, driving under the influence, driving on suspended license, and an alcohol-related offense. The trial court additionally found that the Defendant previously violated the conditions of his probation on multiple occasions. We conclude that the trial court did not abuse its discretion and that the Defendant is not entitled to relief. *See State v. Paul Brent Baxter*, No. M2015-00939-CCA-R3-CD, 2016 WL 2928266, at *6 (Tenn. Crim. App. May 16, 2016) (concluding that the "Defendant's argument about the cost of his incarceration . . . neither overcomes the presumption of reasonableness nor demonstrates an abuse of the trial court's discretion"); *see also State v. Tamika Michelle Claybourne*, No. M2013-00460-CCA-R3CD, 2013 WL 6858260, at *5 (Tenn. Crim. App. Dec. 30, 2013).

## CONCLUSION

Based upon the foregoing reasons, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE